IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Brandon D'Arcy, | |
| *On behalf of himself and those similarly situated*, | Case No.   22-cv-144-KEW |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Doe Corporation d/b/a Turnpoint Services; Hunter Super Techs Service Corporation; Doe Corporation 1-25; John Doe 1-25; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Plaintiff Brandon D'Arcy ("Plaintiff"), on behalf of himself and others similarly situated, brings this action against Doe Corporation d/b/a Turnpoint Services ("Turnpoint Services"), Hunter Super Techs Service Corporation, Doe Corporations 1-25, and John Does 1-25 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with overtime wages as required by the Fair Labor Standards Act ("FLSA") and failure to pay all wages due as required by Oklahoma Protection of Labor Act ("OPLA").

2.     Defendant Turnpoint Services, through partnerships with companies such as Hunter Super Techs Service Corporation, provides heating, ventilation, air conditioning, plumbing, and electrical services to customers in 28 states.

3.    To provide these services, Hunter Super Techs Service Corporation and/or Turnpoint Services employ technicians.

4.    Plaintiff seeks to represent the technicians employed by Hunter Super Techs Service Corporation and/or Turnpoint Services within the three years prior to the filing of this Complaint (1) who have been paid a piece rate without any overtime premium or (2) who have had a portion of their wages diverted to pay other employees in violation of the employment terms offered to them (the "technicians").

5.    Some or all of the technicians employed by Hunter Super Techs Service Corporation and/or Turnpoint Services have been denied time-and-a-half overtime wages on hours worked in excess of 40 hours in a workweek.

6.    Specifically, some or all of the technicians employed by Hunter Super Techs Service Corporation and/or Turnpoint Services are paid on a piece-rate basis, but do not receive 1.5× their "regular rate" for hours in excess of 40 each workweek.

7.    In addition, some or all of the technicians employed by Hunter Super Techs Services Corporation and/or Turnpoint Services have been denied earned wages on certain jobs when Defendants diverted a portion of the technicians' earned wages in order to pay a helper in violation of the agreement entered between the technician and Defendants.

8.    Defendants repeatedly and willfully violated the Fair Labor Standards Act and the Oklahoma Protection of Labor Act by failing to pay overtime wages and failing to pay all earned wages to their technicians.

9.    All technicians, including Plaintiff, have been subject to the same or similar employment policies and practices.

2

## JURISDICTION AND VENUE

10.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

11.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Oklahoma law claims.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because one of the Defendants resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Brandon D'Arcy**

13.     Plaintiff Brandon D'Arcy is a resident of Oklahoma.

14.     Plaintiff is an "employee" of all of the Defendants pursuant to the FLSA and 40 Okla. Stat. tit. 40, § 165, *et seq.* ("OPLA").

15.     Plaintiff has given written consent to join this action.

**Defendants**

16.     Defendant Turnpoint Services holds itself out as a corporation with its headquarters in Louisville, KY.

17.     Upon information and belief, Defendant Turnpoint Services acquired Hunter Super Techs in approximately April of 2020.

18.    Defendant Hunter Super Techs Services Corporation is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Oklahoma.

19.    Turnpoint Services partners with companies such as Hunter Super Techs Services Corporation to provide heating, ventilation, air conditioning, plumbing, and electrical services to customers.

20.    Turnpoint Services and Hunter Super Techs Services Corporation together own and operate Hunter Super Techs.

21.    Hunter Super Techs provides heating, ventilation, air conditioning, plumbing, and electrical services to customers in Oklahoma and Texas.

22.    Turnpoint Services owns and operates 40 total brands in 28 states together with various operating partners, including 4 Seasons Heating & Air; accutemp; Anderson Plumbing, Heating & Air; Anthony Plumbing, Heating, Cooling, Electric; Apollo Home; Aztec Plumbing & Drains; Blake Bros. Plumbing, Electrical, and Heating; Campbell & Company; Cassell Brothers, Inc.; Chapman Heating, Air Conditioning, and Plumbing; Charles Stone Heating & Cooling; Cool Air Mechanical Heating, Cooling, and Plumbing; Corley Plumbing, Air, and Electric; Dauenhauer Plumbing, Heating, & Air; Ellington Air Conditioning & Heat; Fayette Heating & Air Complete Home Solutions; GAC Services; G Force Getzschman Heating; Greens Appliance Heating & Cooling; Greenwell Plumbing; H2O Maestro Plumbing; Home Comfort Experts; Hunter Super Techs; LIMRIC Plumbing, Heating, Air; Love Plumbing Air Electrical; Maeser Plumbing Heating Cooling Bathroom Remodeling; Meetze Plumbing; Reliable Power Systems; RR Rooter Ranger; Rother Heating & Cooling, Plumbing Electrical Drain Services; Schaal Heating Cooling Plumbing;

Scott Hale Plumbing Drain Heating Air; Shane Elmore Plumbing; Sunny Service; T.Webber Plumbing Heating Air Electric; Tiger Plumbing, Heating, Air Conditioning& Electrical Services; Total Comfort; and Webb Heating & Air Conditioning (collectively, the "Turnpoint Partner Organizations").

23.    Turnpoint Services was established in 2016 when private equity firm Trivest purchased Dauenhauer Heating & Air.

24.    Not long after it was created, Turnpoint Services began to acquire other local brands providing heating, air, electrical, and plumbing services.

25.    According to their CEO, Turnpoint Services provides heating, cooling, plumbing, and electrical services in 35 metropolitan areas located in 28 states across the country.

26.    Turnpoint Services uses a data-driven business model to transform the delivery of home services. The company's strategy is to add leading service brands in attractive local markets and enhance their organic growth potential with world class corporate support services.

27.    Upon information and belief, Turnpoint Services assists the Turnpoint Partner Organizations with recruiting, hiring, and onboarding.

28.    Plaintiff's paystubs for the work he performed for Hunter Super Techs were issued by Turnpoint Services from their headquarters at 3416 Robards Court, Louisville, KY 40218.

29.    Upon information and belief, time and payroll records for the technicians who work at Hunter Super Techs are maintained by Turnpoint Services.

30.    Upon information and belief, all technicians at Hunter Super Techs receive paychecks that are created and sent by Turnpoint Services.

31.     Defendants have substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.     Defendants determined and executed the pay policies that are challenged by this lawsuit.

33.     Defendants have direct and/or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

34.     At all relevant times, Defendants maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, recordkeeping, payroll, pay rates, deductions, and other practices.

35.     Defendants are "employers" of Plaintiff and similarly situated employees as that term is defined by the FLSA and OPLA.

36.     At all relevant times, Defendants have been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37.     Turnpoint Services's gross revenue exceeds $500,000 per year.

38.     Hunter Super Techs Services Corporation's gross revenue exceeds $500,000 per year.

39.     Upon information and belief, Defendants may own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' operation, and qualify as "employers" of Plaintiff and the technicians as that term is defined by the FLSA and the OPLA. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

40.     Upon information and belief, there are additional individuals who also may qualify as "employers" of Plaintiff and the technicians as that term is defined by the FLSA and the OPLA. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

41.     Turnpoint Services and Hunter Super Techs Services Corporation together own and operate Hunter Super Techs.

42.     Hunter Super Techs employs technicians.

43.     The technicians employed at Hunter Super Techs are non-exempt employees entitled to overtime under the FLSA.

44.     The technicians employed at Hunter Super Techs are hired to perform skilled labor relating to the provision of heating, ventilation, air conditioning, plumbing, and electrical services to Hunter Super Techs customers in Oklahoma and Texas.

45.     The technicians at Hunter Super Techs are paid based on a percentage of the customer price of the services they provide.

46.     In other words, the technicians at Hunter Super Techs are paid a "piece rate."

47.     The technicians at Hunter Super Techs work in excess of 40 hours per week in some workweeks.

48.     Defendants did not record the precise hours worked by the technicians at Hunter Super Techs. However, all of Defendants' jobs were tracked electronically, so Defendants' records should provide evidence of the amount of time Plaintiff and other technicians worked each workweek.

7

49.     When the technicians at Hunter Super Techs worked in excess of 40 hours in a given workweek, Defendants did not pay them time and a half their regular rate for their overtime hours.

50.     Instead, when the technicians at Hunter Super Techs worked in excess of 40 hours in a given workweek, they were paid their regular piece rate for all work performed.

51.     When they were hired, the technicians at Hunter Super Techs were promised that they would be paid a certain hourly rate, such as $32.50 per hour, when they go on a call for a recall or a warranty that was not their own recall. They were informed if they brought a helper with them to complete the recall or warranty job they would have to share the $32.50 with the helper that went with them.

52.     During their employment, the technicians at Hunter Super Techs have had deductions taken from their pay to pay the hourly wages of helpers on jobs that were not recalls or warranties, such as install or repair jobs.

53.     Hunter Super Techs deducted a percentage or an amount from the technicians' income when a helper assisted them on installation, repair, or other jobs.

54.     Hunter Super Techs did not honor its commitment to pay the technicians 17% of each job they completed. For example, on jobs involving a model and serial number, or on jobs when the customer paid over $3,000, Hunter Super Techs reduced technicians' pay from 17% to 6%.

## Plaintiff's Individual Factual Allegations

55.     Plaintiff worked for Defendants as a technician at Hunter Super Techs from May 2020 to April 2022.

56.    Plaintiff was a non-exempt employee.

57.    When Plaintiff was hired, he was informed that he would be paid "by performance only $20.00 door knock fee with 17% after the dispatch fees."

58.    Plaintiff understood this to mean that he would receive $20 for each job he completed and 17% of the amount paid by the customer for the service performed after deducting dispatch fees.

59.    Plaintiff worked over 40 hours in some workweeks.

60.    Plaintiff regularly started work at 8 am each morning and was required to be available to accept jobs until 5 pm. Plaintiff regularly worked this schedule Monday through Friday.

61.    Plaintiff also had to cover "on call" shifts where he was required to be available for about one weekend day per month and one night a week until 8 pm to accept jobs.

62.    If a request for service came in that was assigned to Plaintiff at any time up until 4:59 pm on a day when Plaintiff was working, Plaintiff was required to accept the job. As a result, Plaintiff regularly worked past 5:00 p.m. to complete jobs.

63.    Particularly during warmer months, Plaintiff regularly worked over 40 hours per week.

64.    Hunter Super Techs' busy season ran from April-November, during which Plaintiff regularly worked from 8:00 a.m. until whenever the jobs were done for the day. This meant he routinely worked from 8:00 a.m. to 8:00 p.m., five days per week.

65.    Defendants did not record Plaintiff's worktime. However, the technology used to track the jobs completed by Plaintiff and other technicians should provide some information about when Plaintiff was working.

66.    Defendants did not pay Plaintiff time and a half his regular rate for hours worked in excess of 40 in a workweek.

67.    If a job assigned to Plaintiff was cancelled, he was not paid anything for it, not even a "door knock fee".

68.    When Plaintiff was hired, Hunter Super Techs agreed that for "Recalls & Warranties" Plaintiff would be paid "$32.50 an hour if it's not your recall. Take a helper split the $32.50".

69.    Hunter Super Techs did not state or indicate to Plaintiff that there was any other situation, besides recalls and warranties, when Plaintiff would be required to pay for a helper or when Plaintiff would have money deducted from his income because he was assisted in his work by a helper.

70.    Hunter Super Techs did not pay Plaintiff all wages due to him based on the work he performed and the compensation the company stated he would receive.

71.    Contrary to the contractual promises made to Plaintiff when he started his employment, Defendants breached their obligations by reducing his pay in various ways, including deducting 20% of his pay if a "helper" went on a job with him, reducing his 17% to 6% for labor and materials that cost the customer over $3,000, and ultimately reducing his 17% to 6% for jobs that included products with a model & serial number, which essentially caused his pay to be reduced to 6% for all jobs completed.

72.    Plaintiff was denied time and one-half overtime wages for hours worked in excess of 40 in a work week.

73.    Plaintiff was denied his earned wages when Defendants diverted a portion of his pay to cover the wages of helpers on non-recall and non-warranty jobs.

74.    Plaintiff was denied his earned wages when Defendants failed to pay him 17% for each job he completed.

## COLLECTIVE ACTION ALLEGATIONS

75.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former technicians at Hunter Super Techs during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

76.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to pay Plaintiff and the FLSA Collective time and a half their regular hourly rate for overtime hours. Plaintiff's claims are essentially the same as those of the FLSA Collective.

77.    Defendants' unlawful conduct is pursuant to a company policy or practice.

78.    Defendants are aware or should have been aware that employees paid a piece-rate are entitled to overtime at time and one half their regular hourly rate, as determined on a week by week basis, for hours worked in excess of 40 hours per week.

79.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

80.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

81.    The FLSA Collective members are readily identifiable and ascertainable.

11

82.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former technicians and similar employees paid on a piece rate employed by Defendants in the state of Oklahoma from the date five years prior to the filing of the original Complaint in this action to the date of final judgment or when the challenged practices are ceased (the "Rule 23 Class").

84.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

85.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

86.     The hours assigned and worked, jobs completed, and the rates of pay paid for each Rule 23 Class Member are determinable from Defendants' records.

87.     All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

88.     For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

89.     Notice can be provided by means permissible under Rule 23.

12

90.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

91.    There are more than 50 Rule 23 Class members.

92.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

93.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the OPLA.

94.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

95.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

96.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

97.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

13

98.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

99.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether Plaintiff and the Rule 23 Class members were paid time and a half their regular rate for hours worked in excess of 40 hours per workweek;

b.    Whether Plaintiff and the Rule 23 Class members were exempt from the overtime requirements of the FLSA;

c.    Whether Plaintiff and the Rule 23 Class members had deductions taken from their pay to cover the wages of helpers for non-recall and non-warranty jobs they completed;

d.    Whether Plaintiff and the Rule 23 Class members were paid less than the percentage they were promised they would be paid on certain jobs;

e.    Whether Plaintiff and the Rule 23 Class members were subject to the same or similar terms of employment and compensation;

f.    Whether Plaintiff and the Rule 23 Class members had the same or similar job duties;

Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

g.    The nature and extent of class-wide injury and the measure of damages for those injuries.

100.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

101.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

102.    Plaintiff and the FLSA Collective were non-exempt employees entitled to the protections of the FLSA.

103.    Plaintiff and the FLSA Collective worked in excess of 40 hours in a workweek in some workweeks.

104.    Plaintiff and the FLSA Collective were paid on a piece-rate basis for each job they completed.

105.    Plaintiff and the FLSA Collective had deductions taken from their pay that resulted in their overtime wages dropping further below their regular rate.

106.    Plaintiff and the FLSA Collective were not paid time and a half their regular rate when they worked in excess of 40 hours in a workweek.

107.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

108.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid overtime wages, liquidated damages, costs, and attorneys' fees.

### Count 2
### Recovery of Unpaid Wages
### Oklahoma Protection of Labor Act, Okla. Stat. tit. 40 § 165 *et seq.*
### (On Behalf of Plaintiff and the Oklahoma Wage Class)

109.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

110.    During all relevant times, Plaintiff and the Rule 23 Class are or were non-exempt employees under the OPLA.

111.    During all relevant times, Defendants were employers covered by the OPLA.

112.    The OPLA requires that Defendants pay Plaintiff and the Oklahoma Wage Class all wages due on regular paydays designated in advance at least twice during each calendar month.

113.    By failing to timely pay overtime wages as required by the FLSA, Defendants failed to pay Plaintiff and the Rule 23 class all wages due to them by their regular payday.

114.    By failing to timely pay wages that were instead diverted to pay the wages of helpers on non-recall and non-warranty jobs, Defendants failed to pay Plaintiff and the Rule 23 class all wages due to them by their regular payday.

115.    By failing to pay the percentage they promised they would pay on each job completed, Defendants failed to pay Plaintiff and the Rule 23 class all wages due to them by their regular payday.

116.    By failing to pay Plaintiff and the Rule 23 Class all agreed upon compensation earned and due, Defendants have violated OPLA.

117.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorney's fees pursuant to Okla. Stat. tit. 40 § 165.9.

**WHEREFORE**, Plaintiff Brandon D'Arcy prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class,

16

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid overtime wages, reimbursement of expenses and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.    An award of unpaid wages and liquidated damages under the OPLA.

F.    An award of prejudgment and post-judgment interest.

G.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

H.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Jeffrey A. Taylor
Jeffrey A. Taylor
OBA # 17210
Attorney for Plaintiff
JEFFREY A. TAYLOR, P.C.
5613 North Classen Boulevard
Oklahoma City, OK 73118
Telephone: (405) 286-1600
Facsimile: (405) 842-6132
taylorjeff@mac.com

Andrew R. Biller (Ohio Bar # 0081452) (*pro hac vice forthcoming*)
Andrew P. Kimble (Ohio Bar # 0093172) (*pro hac vice forthcoming*)

17

Emily A. Hubbard (Ohio Bar # 0096032) (*pro hac vice forthcoming*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Jeffrey A. Taylor*
Jeffrey A. Taylor

## CONSENT TO JOIN FLSA ACTION

I hereby consent to opt in to this action against Turnpoint Services, Hunter Super Techs, and related entities and individuals to recover unpaid compensation, additional damages, attorneys' fees, and costs under the Fair Labor Standards Act, and be represented by Biller & Kimble, LLC for purposes of bringing such action.

If I am not a named plaintiff myself, then I authorize the named plaintiff(s) to file and prosecute the above referenced matter in my name and on my behalf, and designate the named plaintiff(s) to make decisions on my behalf concerning the litigation, including the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs, and all other matters pertaining to this lawsuit. In the event I am not permitted to go forward in this action (e.g., if this action gets conditionally certified and then decertified), I authorize Plaintiff's counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendants.

*Brandon Darcy*
_____          April 19, 2022
Signature                                        Date

Brandon Darcy
_____
Name (Printed)                                 Email

Address:                                         Phone